Gentlemen, we have one case on the call today. The time allotted is 15 minutes for the epaulant, 15 minutes for the epaulet, 5 minutes in rebuttal. I don't use the timing lights, but I'll hold you to the time. Call the case, Madam Clerk. 112566, Usco Industries v. Poolman of Wisconsin. Okay. We've got a motion. You filed several motions to cite additional authority. Yes, sir. Do you have any objections to those? I don't know of one that wasn't on the file yesterday. There are two of them. One filed on the first, one filed on the second. I've only seen one of them. We got it yesterday. We have two summary judgment cases. Two magistrate cases, Northern District. One was from the Northern District, one was from another state, from another state's federal court, but they're both summary judgment cases. The merits aren't the issue. Don't argue them. We'll rule on the motion to cite additional authority with the case. Your Honor, I may say that the second motion was faxed and delivered. I have a confirmation of the faxed delivery to three plaintiff's attorneys. And the case that we cited yesterday is a case that they handled specifically. It's desertion. We'll rule on with the case. Don't argue with the argument. Okay. Hold on. Here we go again. All right. You can sit down. Okay, counsel. Thank you, Your Honor. Good morning. This is going to go on. You're not going to sit down. This will go on for a little bit. Counsel, Justice Hoffman said just have a seat. Oh, I'm sorry. We'll see what happens. A little hard of hearing this morning. I apologize. Let's hope this is the end of it. I don't know. Let's try it, see what happens. Good morning, Your Honor. Counsel, Eric Seymour. Thank you. We can't get him to shut it off either. It'll go on for a couple of minutes. Mr. Bailiff. Mr. Bailiff. Get on the phone and tell him to shut that off. We're trying to report this building. Don't shut it off. Huh? Okay, good. Come on. Let's try it now. Just for clarification, may I mention the cases during my argument? No. Okay. The first question before Your Honor concerns the adequacy of an in-plaintiff, which question in turn turns on the scope of the TCPA. 227B only imposes liability on the party that sends a fax. You should construe that language in light of traditional tort principles in Section 217 of the Communications Act. Only a party that sends a fax or an agent should be liable under the express terms of the Act. By its clear terms, 227B does not impose liability for faxes sent, quote, on behalf of, close quote, a party. In contrast, 227C imposes, quote, on behalf of liability. Under these circumstances, traditional agency law should not be overridden. Would you agree that your client is potentially responsible for the smaller group of faxes that it did hire the company to send on its behalf? For purposes of class certification, we have not contested that. So for purposes of this appeal, that is true. We will contest that subsequently because they were misled intentionally by the broadcaster with respect to the consensual nature of the recipients that consented to receive the faxes and were intentionally misled with respect to the legality. And so we reserve that on the merits, but not for purposes of this hearing. So, yes, it's correct. For purposes of the class certification, that is absolutely correct. And isn't that still a big enough group to justify a class certification? No. Well, yes and no. The argument that we have, that's an excellent question, is that because the plaintiff himself or itself does not have a viable claim, has no claim in fact. You don't have a plaintiff in the class to actually be served. There can't be, right? And that's, you know, if you look at the Peasel case, the judge denied certification for exactly that reason. And it's clear the merits can be considered to the extent they relate to the class criteria because you're just making a procedural determination. So we're not asking for summary judgment to be entered in our favor. What we are asking is for a determination that the plaintiff is an inadequate representative because it has no viable claim. Well, then you'd have to decertify the class, and they'd have to come up with a new plaintiff when the case gets dismissed. If they could do so, right? With leave of court, they'd have to obtain leave of court at this late date, you know, many. And that would raise another set of issues, but it's absolutely correct. And our position is that the trial court's statutory interpretation of the TCPA was simply wrong. She did not even mention our adequacy argument in her certification order. In her view, the vicarious liability, whether or not the broadcaster acted as the agent was irrelevant, principles of vicarious liability were irrelevant. The only thing that mattered apparently was the fact that this broadcaster had been paid. But that's not sufficient. Defendant did not control the method and manner of the broadcast. It's undisputed. Defendant instructed the broadcaster in writing, and this is undisputed, quote, I would like only to market to small electric motor repair and service companies. That's on C-164 of the record, C-164. Both the defendant and the broadcaster, Abrams, testified that the defendant had provided this limiting instruction. There's no question defendant had no involvement in compiling the list and assembling the data, had no right to the fax transmission reports, had no rights to the underlying data of the broadcaster that was in New York and Romania. Mr. Seymour, I'm a little confused by your answer to Justice DeLorte's question as to whether or not you agree that the marketing to the group that was specifically originally targeted, that's the small contractors, the small businesses that did the repair. If that group is okay, how can you make a distinction that, okay, that's okay, and we agree that for purposes of that group, the faxing company was the defendant's agent, but with respect to the large manufacturers of big engines or whatever that other group is, how are you going to parse that out for purposes of this appeal? How would you do that? Well, I think for purposes of this appeal, the only claim to which this argument relates is the named plaintiff's claim. And our position is if the named plaintiff has no claim, has no cause of action, he can't possibly represent the class. Why do you think that the named plaintiff has no possible cause of action? Because the named plaintiff is a large crane company, we expressly request that they'd only be sent to small repair companies. So that's kind of getting back to my question. So your argument is, that's the nuance I was trying to get to. Your argument is since the defendant specifically instructed B2B to only market to small companies, they violated his instruction and marketed to large companies, and the plaintiff is a large company, the plaintiff couldn't possibly have a cause of action against the defendant. That's your argument. Right. We were marketing parts for a hot tub van. And essentially a large crane company has no use for that. The advertisement would serve no benefit. It wasn't part of our targeted audience. It was outside our express instructions. And that's part of it. But in addition, we're also saying that we didn't control the method and means of the fax broadcast itself. We didn't have access to the data. We didn't have access to how they compiled it. All that was determined by the broadcaster. They used their own list. But in order for us to agree with your argument that the plaintiff has no cause of action and therefore cannot represent the class, we would have to also accept your argument that because the defendant didn't control who it was sent to, didn't control the faxes, didn't control the machine, gave specific instructions which were violated, that, you know, everything else relating to agency goes out the window and there is no cause of action because this particular plaintiff only has large equipment. So he could never have been an intended target of the defendant. That's okay. It's very nuanced. I'm trying to put this all together. Yes, exactly. That's exactly right. I mean, our position is that we have to look at this under traditional agency principles and whether the independent contractor was acting as our agent at the time that it sent the fax to the plaintiff. And our position is that the record on each of those points is undisputed. It's undisputed that the plaintiff is not within the demographic of our instruction. It's undisputed that we didn't have the right to access the broadcaster's records. It's undisputed that we didn't control their. So therefore, as a matter of law, certification should be reversed and remanded. And alternatively, for clarification of the standard, that would be the alternative. Agency principles, though, only get us so far because we have to consider the federal regulations that interpret the statute to which we must give some level of deference. And while the courts are so far mixed on this, I don't seem, first of all, is it correct we don't have a court that has binding authority on us that has resolved the issue of whether the advertiser is always going to be responsible as opposed to the blaster in these kind of facts? Yes. We have a whole bunch of federal courts all over the map. Federal courts that are, I don't think they're all over the map. I think there's a very clear consensus. I'll just say that in terms, I think it's very, very clear. Depending upon how Your Honor's rule on the pending motion, I think that it's pretty overwhelming in terms of where the courts are headed. The pending motion is like unringing the bell. What's that? The pending motion is like trying to unring the bell. We've got the motion, the cases are in there. They're not binding on us, but they're informative. And we may deny the motion, we may grant it. That's up to us later on. But here's my question that I'm leading into. Congress made a decision, a public policy decision, to stop unwanted faxes. They were waking people up in the middle of the night when the fax machine would ring because the computer didn't know it was 2 a.m. in whatever city the fax machine was in. And isn't it possible that Congress could have made a decision and sort of followed through by the agency and the regulations that it so vehemently wanted to stop these things that it was going to put the advertiser on the hook no matter what? But Congress didn't express that in the way they wrote the statute. The statute solely imposes liability on the sender, and there's no dispute that the defendant did not send it. But does the federal statute define sender? Because I use the words advertiser and blaster. That's what we've been talking about internally. Yes, and those are great questions. And we'll address the federal regulations because I think they are an important component of this analysis. The statute only refers to the sender. Now, under traditional court principles, you can extend that to the agent. The FCC, in one of its regulations, refers to, it makes a comment that either sender or someone on its behalf, or, you know, that broadcast. It adds the end on behalf of language in one of its comments. But the FCC, this is from the FCC, but the FCC has not determined what it means by that. And that is set forth in, if I may cite, 26 FCCR 5043. The FCC sought comment in May of 2011, and it says, quote, we seek comment on the circumstances under which a person or entity is liable for telemarketing violations committed by dealers or other third parties that act on the person's or entity's behalf in particular. We ask for comments regarding the following questions. One. No, I think that's in the brief. We read that. But the question is, after all the public comment, they still went ahead and issued these regulations. No, not at all. They have not. They have not. There's been no ruling. There's been no ruling from the FCC. And this also just pertains to prerecorded messages, which is different than, and the statute is pretty darn clear. It only opposes liability on the sender. It doesn't oppose liability on behalf of or on the agent. It's actually an extrapolation, and you're broadening the act to include agents. And that would be, and we have not contested it. We have not contested whether liability can be imposed upon agents of the advertiser. Are you contesting in this case in any way, is there anything in the record that we could put our hat on if we wanted to, along the line of that this is not, because the $500 penalty was intended to be personal, a personal right of the recipient of the fact that you can't do a class action on this? Because some courts have held that way. But it doesn't seem to be something raised here. I'm sure we're not missing it. Yes. I'm glad you mentioned that because there are a handful of courts that have ruled that the statute was not intended to be part of the class action procedure. Most recently, there's a case from the Massachusetts Circuit Court. There were a couple of cases, and so there are a few. I will have to say they are in the minority. They're in the distinct minority of decisions. Most of the courts have ruled that the class action device can be part of the. . . But that's not my question, Counselor. I understand that there are a few cases that hold that way. There are a number of cases on this statute that don't seem to address it at all. Yes. All right. Did you raise it as a defense in this record? In other words, did you go to Judge Quinn and say, this cannot be a class action because this is an individual right of the recipient, and therefore they can't haul in everybody else? Yes. And I would have to. . . Honestly, I would like the opportunity to review our briefs because I. . . You have a chance in rebuttal. Okay. I'll try to. . . Yes. At the moment, I cannot think of anything specifically where that issue was raised. Yes. Now, it's important to keep in mind that in evaluating the criteria, the class action device is merely a procedural remedy and that it doesn't affect the substantive rights of any of the parties. So if the court denies certification, each of the members of the punitive class retain their individual rights to file their own individual claim and collect $500 even though they've been damaged by nothing or just a few pennies. So the substantive rights of the parties are not affected. And there's no question this is just a procedural device. We cite the U.S. Supreme Court case in our brief for that proposition. It's simply a procedural remedy. All of the substantive rights remain the same. If I may say a few words about the second issue on the appeal, which is the. . . Do it quickly because you're very close to being out of time. Okay. Do I have five minutes for rebuttal? You get rebuttal. I get rebuttal. The second issue concerns the adequacy of counsel. And we simply ask the court create a standard upon which counsel should be measured when the issue is counsel's unethical alleged misconduct. And McKnight's Seventh Circuit ruled that certification should be denied where the counsel has committed a serious ethical breach. I believe that the McKnight standard can be improved, by your honors. I think that an ethical violation that can be reasonably perceived. . . Tell me what the ethical violation is here. I mean, I read your brief, but you were circumspect in how you were arguing it. But what's your best argument that this plaintiff's counsel should be, should not be allowed to represent these plaintiffs because. . . Yes, and I will say that. I will answer that question. This was not argued before the trial court, so we'd have to. . . I'm just asking you now. There was a $5,000 payment was provided to a critical witness, Abrams' attorney, in a Ramada envelope without any explanation. And I believe that that. . . And the Seventh Circuit ruled that if that payment had been meant to influence testimony, certification should be denied. That would undermine the integrity of the judicial proceedings. A $5,000 payment? A $5,000 check was written personally to Mr. Rubin, who was the attorney for Abrams. But then there's a whole underlying story that that was really to buy the computer from them rather than keep transferring the data, and the check was never cash, right? Mr. Rubin, but he testified clearly that he interpreted that as a pale. . . He viewed that as an improper. . . And he sent a blistering letter back to which the only response was, sorry for the miscommunication. And how you can improve the Seventh Circuit's opinion is that if that type of conduct could be reasonably perceived as undermining the integrity of the judicial process or the class certification process, that should be grounds for denying certification. This is just a procedural remedy. The Seventh Circuit's, they say, if it was meant to influence testimony. That's a very hard. . . That requires us almost to get into the mind of the person that offered the payment. But I think that if the standard that the Seventh Circuit articulated could be improved upon by this court. In addition, if I may say one more thing about that, it could also be improved in this respect, that an ethical violation that directly produces a large financial reward for class counsel should be specially scrutinized. If you look at the cases involving ethical violations, most of them the counsel's not covering anything. Most of them have nothing to do with the case for which certification is sought. Here there was enormous, millions or tens of millions of dollars. And if you're serious about stopping unethical behavior, then I think behavior that results in a windfall should be scrutinized more closely than other types of violations. We'll give you five minutes in rebuttal. Counsel. Thank you very much. Good morning. May it please the Court. My name is Philip Bach. I'm here on behalf of US Co-Industries. Regarding the first issue, the adequacy of the plaintiff, the defendant moved for summary judgment on the named plaintiff's claim, and that was denied. And they didn't appeal that. That's not before the Court. You can't appeal a denial of motion for summary judgment, Counsel. But it sounds like they're appealing it here because they're... Counsel, there's no basis for an appeal. No, I know. We don't have any jurisdiction here. I agree. My point is that he's arguing that the plaintiff is inadequate because of the reasons they argued on summary judgment. And that's really not the issue. The issue is the plaintiff's in the same shoes as everybody else. Everybody else got the same facts. The guy didn't have permission from anybody. They're all illegal. And he says, well, on an early correspondence in March, he hand wrote, I would like to only target small engine repair shops or something like that. Please tell me how it is. And then a week later they sent 1,700 faxes. And then eight months later they sent 10,000 more, and he didn't say anything. There was no, okay, here's what we're doing. I'm only hiring you to do this. Don't send it to anybody else. He says his hands were tied. He couldn't look at their records. He didn't know what they were doing. But he never even asked. He didn't even care. He said it was cheap. It's like hiring somebody, hiring an accountant for $2, telling him you want to save as much on your taxes as possible and then say I'm not liable for tax fraud. How would you expect him, this fax company was in New York, right? They say that they worked for a company in Romania. And if you look at the fax, it says it's sent from Romania. Okay. But whoever the defendant was talking to was supposedly in New York, right? I don't. Well, they were someplace else other than in Wisconsin or wherever. Right. There's a guy in Philadelphia. Somewhere on the East Coast. So how would you propose that he would be able to monitor, other than giving them the instruction, only send it to companies that do repairs on small engines or whatever it was the instruction. How would you propose that he monitors? Isn't there supposed to be some kind of business ethics involved here? How would the defendant monitor what this fax company is doing, other than giving them the instruction? I don't know. I mean, it's his duty to monitor. That's what the FCC says. The advertiser is ultimately liable. The guy hires someone. He says the reason he sent junk faxes was because it's super cheap. It was a machine gun approach to marketing. And this is sort of his goal is that he wants to send it to small businesses because that's where he thinks he's going to get the work. He doesn't say, here's a list of small businesses to send it to. These are my customers or anything like that. He just says, I would like to target small engine repair shops. He doesn't say he cared that they went. Except in his affidavit later, in his deposition, he admitted that these faxes were sent on his behalf. He cared that they went to businesses that would use the product that he was manufacturing, which was the small, whatever, small engine. Yeah. So when they take it and send it to large crane manufacturers and so on, that is clearly outside of his instruction. What do you say to that? I mean, his instruction doesn't read like an instruction. It's a goal. And we don't know, didn't they do the best they could? How do they know? I don't even know what he means by small. It's like a subjective thing. Let's take this to the next step. Let's say the advertiser created a much better paper trail than this one did and said, I want you to send it to every small motor company in Milwaukee, Wisconsin. Here's the yellow pages. I've highlighted them. There's 112 of them. Go ahead and fax out to this. It's all in writing. It's double signed. And then the folks in Romania send out 4,000 faxes to hamburger stands and who knows who else. Where do you draw the line in terms of the advertiser's going to be ultimately responsible for the acts of the spammer who is acting outside the scope of the agency? That's a good question, Your Honor. I don't think that line is being drawn here on an appeal of class certification. But he asked you a question and he'd like an answer to it. Okay. Well, I apologize. There's got to be an analysis here. There can be, and that will be on the merits of the case. Maybe they'll win on the merits. Let's assume that nobody in the class is a small engine repair shop according to the defendant's definition of that. The question is can the plaintiff represent all those people who got these illegal faxes saying he's liable for sending them to him? And that should be decided on the merits. That's for later. The question now is can he represent everybody else? Some may have been within his scope of authority and others not. And that would occur to me would create two different classes. There could be subclassing later. They've never argued that. But the point of the matter is if you've got a person that belongs to subclass B, they can't represent the people in subclass A, even though we're dealing with junk faxes in general. So the question becomes tell me about subparagraph C that talks about, pardon me, about 217 that talks about acting within the scope of one's employment. Now, you've got an independent contractor. You're not going to dispute that the sender is an independent contractor, are you? I mean, we would say they're an agent, I think. Are they independent contractors? They could be an independent contractor. So they're independent contractors. So that means that you have vicarious liability only when they act within the scope of their employment. If they're employed only to send faxes to small engine manufacturers and they in fact send them to people other than small engine manufacturers, then why would the advertiser be liable in light of the language of 217, which says, you know, it's only your act if they were acting within the scope of their employment. I mean, 217 isn't, we argued this in our break, 217 isn't limiting liabilities. It's expanding. Okay. It doesn't say the act. Okay. I've heard that argument. Now, tell me a case. Give me the factual scenario where 217 actually expands liability as opposed to limits it. Tell me under what circumstances a person wouldn't be liable except for 217. Every case where the corporation doesn't send the faxes itself. Well, no, because you have vicarious liability on simple agency principles. If I authorize someone to send faxes to a group of people and it's unsolicited, there's a violation, isn't there? Yeah. Period. And I'm going to be responsible for it because I told them to do it. And they're my independent contractor acting within the scope of their authority. So that isn't going to do it for you. Give me an example where there would be no liability except for 217 to support your expansion of liability as opposed to narrowing the argument. I don't know if I can think of one. You can't. I mean, I think the question is. I tried it for two days. I can't even envision one. It's not an expansion of liability. It's a limitation of liability. Does federal statute law automatically incorporate Illinois agency law? If we're in federal court and they're interpreting this statute, are they going to say, well, what does Illinois think about agency principles? Well, the interesting thing about it is there's no federal common law anymore, is there? No, but we do have FCC regulations. I think it was Erie v. Tompkins, I think, the last time I went to law school. But the fact of the matter is, of course, they incorporate agency law. They use it and incorporate it all the time. And so if the only way you're going to hold an independent contractor liable or the principle of an independent contractor liable is when that independent contractor acts within the scope of his agency or his employment, then the question becomes what happens when he acts outside of it? Right. And the answer some of the courts have given you is no liability. And some other courts, Illinois courts, have said that an agent principle can be liable for the acts of an independent contractor outside the scope if he didn't exercise reasonable diligence in selecting the independent contractor. And so here he hires somebody to do something. It's the same true if he didn't exercise reasonable diligence in memorializing the scope of the agency. That's what we would argue, that he didn't really specifically look at it. But is there a case that says that? Well, I mean, maybe we're making cases here, but this is not the stuff that was briefed on class certification. So I apologize. I'm not, you know, we don't have a whole brief about why he can be liable under independent contractor law in Illinois. Well, was there evidence in this record at the time that the judge ruled on class certification that they only authorized and told this spammer to distribute to manufacturers of small engines? Do you have an affidavit in the file? They did put it in the affidavit after the guy's deposition. We moved to strike it because it wasn't signed, and then they changed it, and it's in the record. So it was there when she ruled? Yeah. Any counter-affidavits, evidentiary material? No, but his deposition contradicted what his affidavit that came after the deposition contradicted some of the things he said in his deposition. For example, he said that faxes were sent on behalf. B2B sent those faxes on his behalf, that sort of thing. I think the question that Justice Hoffman is asking is a little bit more narrow. It certainly is a question I want to know. With respect to the target businesses to whom these faxes were to be sent, was there an affidavit from the principal of the defendant basically saying, I told them only to send it to the manufacturers and services of small engines. Is there such an affidavit in the record before Judge Quinn ruled on this, yes or no? Yes. Any counter-evidentiary material? That was my follow-up question. Just the deposition and the documents themselves. On that issue, though, did anybody in their deposition say, no, he did not tell us to only send it to manufacturers and services of small engines. Did anybody say that in their deposition? Not that I know of. Okay. And I don't think anybody said that he told them anything about the 10,000 faxes in December, that when he hired them six months later that he said, okay, this time again, find only 10,000 small engine repair shops. The defense counsel cited some 2011 things from the FCC. I don't see that in his briefs. The regulations we're relying on are dated in 2006, and they're dated in 1995. And those are the ones where the FCC says, and I have plenty of things that make sense to say, the person whose stuff is being advertised is liable to make sure that they're only sent legally. Because otherwise you hire somebody in Romania and you say, I'm not going to exercise any control except I'm going to tell them I only want them to go to people with blue eyes. And then when they don't, it's the people in Romania's fault. And that's the argument the defendant is making. And so I don't think that the defendant has showed that the judge abused her discretion in saying that this plaintiff can represent the class, making all these arguments and arguing against the defendant's defense about the scope of authority. On the adequacy of counsel, well, first, Judge Delort asked whether they had challenged whether you can have a class action for these claims.  That's not an argument. If it had been, we would have written a whole bunch of things. There's a U.S. Supreme Court case called MIMS that specifically rejects the senator's legislative history where he said he hopes states will make it as easy as possible to enforce this statute, including in small claims court. That's where they hang their head on saying you can't do it as a class action. MIMS rejects reliance on that and specifically says there's class actions pending in federal courts in Illinois. And Reliable McKnight also says you can't do this kind of claim on a class action basis. On the adequacy of counsel thing, first of all, there's never been any allegation of any misconduct by anybody at my firm. Now, they allege there was misconduct. In this case, they say with this hard drive. They didn't allege it with the $5,000 check in this case. In fact, when we filed our brief, we tried to tell the court here's the whole story. And they moved to strike it. And the court granted the motion to strike, including Eric Rubin's deposition, was stricken from the record on their motion. And now Mr. Seymour is arguing today that what the guy said in his deposition about what he thought when he got the check, that was never an issue in this case. And the reason it wasn't an issue in this case is the same defense firm was representing the defendant in Cy's crab house. And they made an argument about the $5,000 check. And Judge Connelly rejected the argument and denied their request to decertify the class. And so when they were arguing the same things in Cook County, they didn't argue all the stuff they'd already lost because they knew we'd just say, well, here's a judge who already ruled on that. Now it's coming up again because courts, you know, the same defense firm represents defendants in lots of these cases, including five cases that have applied the Culver standard that they want to apply, and they've all applied it to the conduct, all the stuff, all the evidence, big piles. And they said, no, these guys are, nobody doubts their loyalty to the class. They just want the case to go away. They're not trying to get anything for the class. They want to make the class lawyers go away so nobody has a class. We've been doing these cases since 2003. And so we have some level of experience with them. And that's why I think we spend all our time under attack about the conduct from somebody at a different firm. But the judge here applied the Illinois standard, Meyer v. Gillette, Supreme Court. And they cited the Steinberg principle that they adopted in an earlier case. And a judge in Illinois who's shown that the class lawyers have engaged in misconduct already has the authority, and I believe they know it, that they're not going to appoint somebody class counsel if they think the person is a bad person and they did bad things. Judge Gettleman in the Ashford Geer case implied when he said he can, if there's misconduct, he can only deny adequacy for the most egregious misconduct. I think the Seventh Circuit read that as him saying his hands are tied. Even though there's misconduct, I can't reject these guys as inadequate unless it's the most egregious misconduct they've ever seen. And the Seventh Circuit said that's not the standard. If you have serious doubt about their loyalty, don't appoint them to represent the class. And on remand, Judge Gettleman said we are adequate to represent the class. He doesn't doubt our loyalty to the class. And, in fact, the allegations of misconduct aren't true. And so in this case, the judge had already seen us in action on behalf of other classes. At the time in Chancery Division, there was one judge who had all the TCPA cases and they were all transferred to the same judge. That was Judge Quinn at this time. She'd seen us in action on other cases. And when they brought up the misconduct that Judge Kennelly had already looked at, she rejected that, said these guys are adequate, and she wrote an opinion. There are judges who don't write detailed class certification opinions in state court. Sometimes they're just two or three pages that say the motion's granted. This one, she explained the standard, and it's clear from her order that she knew what she was doing. And the defendant really hasn't shown that she abused her discretion in rejecting their misconduct arguments and saying we are adequate. And they haven't shown that there's a reason for this court to adopt a new standard or anything because the old standard works, and judges, there's no evidence that it doesn't work. Counsel, thank you. Thank you. First, with respect to the first issue regarding agency, the record is very clear. Ms. Abrams testified at her deposition that Pullman gave the limiting instruction. And by, I'll quote her, on page C-153, question, with regard to Exhibit No. 6, which is the written instruction, I think we established that it appears that at least for the March faxing, which is a fax issue here, Pullman requested that they only mark it to, in the meantime, I would like to only market to small electric motor repair service companies. Answer, right. You look at the instruction, Exhibit 6, it says I would like only to market to small. I mean, it's very clear. There's no ambiguity with respect to that instruction. And that's what the defendant testified to, and that's what his affidavit says. And that was part of the record. And our motion for summary judgment was incorporated by reference in our response to the class certification motion. And we certainly did not raise the issue that you mentioned in our briefs before. And I would have to spend more time reviewing our briefs to see if it was before the court. We did not raise it in the briefs. I didn't think so. With respect to the adequacy of counsel, all we're asking the court is to set a standard. There is no standard in Illinois with respect to when a counsel's misconduct should be grounds for denying certification. There's actually very few cases about this in any jurisdiction. It's an issue that usually is not raised. The court did not have a standard upon which there's nothing binding. In addition, with respect to the size crab house case, although we're simply asking for this case to be remanded, I just want to point out that in the size case, that $5,000 payment was on a very different footing than it is here because there the defendant, Ms. Abrams, had already testified. In the size crab house case, at the time the payment was offered, she testified in January of 2009 and in 2008. The payment was offered in August of 2009. Before testimony on critical issues, authorization, vicarious liability, the authenticity of the hard drive, I'm just saying the record. We're not asking for the court to make a determination, but the record hasn't been. I think that a standard which permits for decertification or denial of certification in the event that it is perceived to undermine the integrity of the judicial process, that is the appropriate standard that the court should adopt. In addition, counsel is correct that he was not involved with the $5,000 payment, but they have filed hundreds of cases together. They act as a de facto partnership. This is not just an academic exercise. I'm not asking the court to make any rulings. In those hundreds of cases, has any court or any judge ever granted what you're asking to disqualify the firm? It seems that the number of courts have addressed it and have not gone on your side. That's absolutely true. Basically, the courts have said, we don't like this conduct. The Seventh Circuit said, we're distressed by it. During oral argument, one of the Seventh Circuit judges said, your conduct disgusts me. I think this is one step above a burglar. That was the most expressed, but they haven't done anything about it. And I think part of it is that it's establishing a proper standard by which a trial court can reach a fair ruling on this. But Mr. Abbott is correct. I have not made any comment with respect to, or I have no evidence at this time, at least with respect to Mr. Abbott. So we would ask that vicarious liability not be imposed on a defendant for a fact sent by a third party contrary to defendant's express instructions, where the defendant didn't control the means or methods of the broadcast. Plaintiff that does not have a viable claim cannot adequately represent the class. Certification should be reversed. One other thing I wanted to say is if you wanted the specs that show that I served. We have the right. Don't worry. All right. Thank you very much. I appreciate it. Counsel, thank you. The matter will be taken under advisement. The court is adjourned.